POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KINNEY, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br>    v.<br><br>WORKHORSE GROUP INC., DUANE HUGHES, and STEVE SCHRADER,<br><br>             Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>(DEMAND FOR JURY TRIAL) |

Plaintiff John Kinney ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States ("U.S.") Securities and Exchange Commission ("SEC") filings by Workhorse Group Inc. ("Workhorse" or the "Company"), as well as media and analyst reports about the Company and Company press releases.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## NATURE OF THE ACTION

1.     Plaintiff brings this securities class action on behalf of all persons and entities that purchased or otherwise acquired Workhorse securities between July 7, 2020 and February 23, 2021, inclusive (the "Class Period").  Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

4.     This Court has jurisdiction over each Defendant named herein because each Defendant has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

6.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the U.S. mails, interstate telephone communications and the facilities of a national securities exchange.   Defendants disseminated the statements alleged to be false and misleading herein into this district, and Defendants solicited purchasers of Workhorse securities in this district.

## PARTIES

7.     Plaintiff, as set forth in the accompanying Certification, purchased or otherwise acquired the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

8.      Defendant Workhorse is a technology company engaged in the development and manufacturing of electric delivery vehicles.  Workhorse is incorporated in Nevada and maintains its principal executive offices at 100 Commerce Drive, Loveland, Ohio 45140. The Company's shares are listed on NASDAQ under the ticker symbol "WKHS."

9.      Defendant Duane Hughes ("Hughes") served as the Chief Executive Officer, President, and Director of the Company throughout the Class Period.  During the Class Period, Hughes sold over 568,500 shares of his Workhorse stock for proceeds of over $14 million.

10.     Defendant Steve Schrader ("Schrader") served as the Chief Financial Officer of the Company throughout the Class Period.  During the Class Period, Schrader sold 15,152 shares of his Workhorse stock for proceeds of over $332,131.

11.     Defendants Hughes and Schrader are collectively referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants: (i) directly participated in the management of the Company; (ii) was directly involved in the day-to-day operations of the Company at the highest levels; (iii) was privy to confidential proprietary information concerning the Company and its business and operations; (iv) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein; (v) was directly or indirectly involved in the oversight or implementation of the Company's internal controls; (vi) was aware of or

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or (vii) approved or ratified these statements in violation of the federal securities laws.

13.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16.    In 2016, the U.S. Postal Service ("USPS") announced the USPS Next Generation Delivery Vehicle ("NGDV") project, a competitive multiyear acquisition process for replacing approximately 165,000 package delivery vehicles.

17.    Workhorse was one of the companies vying for the NGDV contract, which was thought to be worth approximately $6.3 billion.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

18.     On March 13, 2020, Workhorse filed its annual report on Form 10-K with the SEC for the year ended December 31, 2019 (the "2019 10-K"), which was signed by the Individual Defendants.   Attached to the 2019 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by the Individual Defendants attesting to the accuracy of the financial statements and the disclosure of all fraud.

19.     The 2019 10-K stated the following about the USPS NGDV project, which was of very high importance to the Company:

U.S. Post Office Replenishment Program / Next Generation Delivery Vehicle Project

Workhorse was one of the five participants that the [USPS] selected to build prototype vehicles for the [NGDV] project. The USPS has publicly stated that approximately 165,000 vehicles are to be replaced. In September 2017, Workhorse delivered six vehicles for prototype testing under the NGDV Acquisition Program in compliance with the terms set forth in their USPS prototype contract. In 2019, the vehicles completed the required testing protocol as specified by the USPS.

**Materially False and Misleading Statements Issued During the Class Period**

20.     The Class Period begins on July 7, 2020, when Defendant Schrader granted an interview to a staff writer at *Benzinga*, a financial news publication.   The interview appeared in print on the *Benzinga* website.   When asked how Workhorse separates itself from the competition generally, Schrader responded by explaining why Workhorse trucks were advantageous for "postal services":

**BZ:** How does Workhorse separate itself from the competition?

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**Schrader:** Our trucks don't have a transmission, so we can save postal services upward of 60% of vehicle costs. Our truck will cost fleets 40 cents a mile compared to the current $1 per mile.

21.     On July 14, 2020, Workhorse and other participants submitted their final bids in connection with the USPS NGDV project.

22.     On July 21, 2020, Defendant Schrader again spoke to a staff writer at *Benzinga*.  According to the *Benzinga* article:

Schrader also provided an update on the $6 billion U.S. Postal Service contract for its next-generation mail trucks. Workhorse is one of four remaining participants bidding for the contract. Schrader said he can't discuss too much about the process at this point, but Workhorse is the only all-electric option.

23.     The *Benzinga* article also quoted Defendant Schrader directly:

***"What I will say is our all-electric is probably the perfect vehicle for them***. When you think about what the Post Office does, 70% of their trucks go about 17 to 18 miles a day and make 700 stops--mailbox, mailbox, mailbox. Ours runs more like a golf cart, so that's really what you need. Right now they get five to six miles per gallon. Ours get more than 40 miles per gallon equivalent," Schrader said.

(Emphasis added.)

24.     The article continued:

In addition, he said Workhorse vehicles have half the maintenance costs of the current USPS fleet.

"I think it's a great opportunity for us. Obviously, if we were to get the full award or a decent-sized award, that would be transforming for the company," Schrader said.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

25.     On August 6, 2020, Defendant Hughes granted an interview to the television network, *CNBC*.  Hughes said the following about the USPS contract:

CNBC:       What can you tell us about the status of the U.S. Postal Service potential contract? That contract could be worth as much as about five to six billion dollars. You could get a partial award; you could get a full award. You submitted the RFP, I think, mid-July. When will you know? Your CFO recently said that this award would be transformative for the company. I would imagine that would be so, if your cash position right now is about a hundred million; I mean, that contract could be truly changing for your company.

HUGHES:     Yeah, I would say any contract like that would be changing for any company, virtually. In our case, we're unable to speak about the Post Office at all. I have to say no comment because we're under a gag order not to talk about it. But certainly, to your point, any contract that's worth billions of dollars coming into a company like ours would be a very company-changing experience.

26.     On October 11, 2020, Workhorse issued a press release, entitled "Workhorse Secures $200 Million Financing from Institutional Lenders."  The press release explained that the notes would be convertible into common stock at $36.14 per share, a premium of 35% over the closing price of the common stock on Friday, October 9th, subject to certain potential closing adjustments.

27.     On October 29, 2020, Defendant Schrader sat down for a video-recorded interview with *Benzinga*.  Schrader stated, in pertinent part, the following about the USPS contract:

7

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

BENZINGA:    Can you just refresh us on what this deal would mean for Workhorse?

SCHRADER:    Well, the Post Office is bidding out 165,000 vehicles, so it's a huge fleet opportunity. And I think, from our standpoint, it would be transforming, right, from a standpoint of, just, now [we're] delivering a few vehicles and getting some revenues in and we have a backlog of about twelve hundred orders. But, you know, the Post Office would be 165,000 vehicles over a certain time period, too. So it would be transforming. It would be a big opportunity for us.

BENZINGA:    Do you expect, when they do award the contract, do you expect to be like the only recipient, the only winners, or do you expect to be one of several, or do you have any expectations there?

SCHRADER:    I don't think we have expectations one way or the other. It's, again, we can't comment on it. I think it's up to the Post Office and what they want to do and, at least publicly, they've said that they'll let everybody know by the end of the year.

28.    On January 28, 2021, Defendant Schrader sat down for an interview with the host of a popular YouTube channel focused on investing in the stock market. The pertinent part of that conversation was as follows:

HOST:    So Workhorse has been doing fantastic things as of late, over the last month or so in particular, and there's a few things I really want to speak about today. Now the first one is, Steve, I'd just like to hear your thoughts on Biden saying that the entire federal fleet will be replaced with electric vehicles, specifically American electric vehicles. And I know we can't speak about the USPS contract, even though that's what the entire comment section is probably asking us about, but I'd just like to get your thoughts on

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

his statements and what it could potentially mean for Workhorse going forward.

SCHRADER:    ***Yeah, I think the President's announcement was huge, for several reasons, right?*** It's, one, supportive of the E.V. ("electric vehicle") market. It's, two, all-American, like you said, all-American product buy. And I think he also said a lot about small businesses, and purchasing, whether it be parts or final products, from small businesses, too. ***So I think that's huge. I think it's meaningful that he did this his fifth day into his presidency, right? He did it quickly; he didn't really wait and so I think that, putting a move on that was very quick too. I think it's also meaningful that, when you think about it, when the government gets behind things, things happen.***

And in this case, it's, the government actually is maybe somewhat behind the commercial market. As you well know, customers are already demanding these products, right? Investors are already looking at companies that are making these products, so I think everybody sees that E.V.s are kind of the way of the future going forward, and they see – customers see – the savings opportunities and I think what probably has, the only thing that has been missing, to some extent, is that now you've got the government behind it, from a standpoint of environmental, you know, and just – savings opportunities going forward. ***So, yeah, having the government push us and the President come out, like I said, five days after his inauguration, is huge.***

HOST:    It was nice and quick. And as you just said, I think that's exactly what we wanted to see. I mean, we've spoken a few times now and you've made it very evident that a lot of the people who actually want to buy these trucks – I think every fleet manager in the country at this stage is now heavily contemplating E.V. more so than traditional[] vehicles, from a savings point of view. I think the government to an extent were a little bit behind, so they're

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

seeing something like this come from the President himself, that has to be a huge catalyst to pretty much everybody involved, especially the all-American owned ones, which we know you guys stand very heavily for. So that's awesome; that's just awesome. And that, obviously, it's a very good thing.

SCHRADER: ***Yes. It's a very good thing*** . . . .

(Emphases added.)

29. The statements referenced in ¶¶ 20, 22-25, and 27-28 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was merely hoping that USPS was going to select an electric vehicle as its Next Generation Delivery Vehicle, and had no assurance or indication from USPS that this was the case; (ii) the Company had concealed the fact that, as revealed by the postmaster general in explaining the ultimate decision not to select an electric vehicle, electrifying the USPS's entire fleet would be impractical and astronomically expensive; and (iii) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**The Truth Emerges**

30.     On February 23, 2021, while the market was open, the USPS issued a press release entitled "U.S. Postal Service Awards Contract to Launch Multi-Billion-Dollar Modernization of Postal Delivery Vehicle Fleet."

31.     The press release announced that Oshkosh Defense, not Workhorse, had won the lucrative NGDV contract:

> WASHINGTON, DC — The [USPS] announced today it awarded a 10-year contract to Oshkosh, WI, based Oshkosh Defense, to manufacture a new generation of U.S.-built postal delivery vehicles that will drive the most dramatic modernization of the USPS fleet in three decades.

32.     On this news, securities of Workhorse fell $14.87 per share, or 47%, to close at $16.47 per share in the regular session on February 23, 2021.  The price continued to drop in after-hours trading and opened on February 24, 2021 at a price of $14.07 per share, a fall of over 50% from the previous open, damaging investors.

33.     *The New York Times* published an article on February 24, 2021, entitled "Losing Bid for Postal Contract Proves Costly for Electric-Vehicle Maker."  The subtitle read: "Workhorse, a small truck maker with big ambitions, was counting on the deal for a surge in revenue.  Its shares lost $2 billion in value."

34.     The article stated, in pertinent part:

> The choice of Oshkosh left open the possibility of some electrification. The new vehicles will be equipped with either fuel-efficient gasoline engines or electric batteries, and they will be retrofitted to keep pace with advances in electric-vehicle technology, the Postal Service said.

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

But that rollout could be limited. In response to questioning at a House Oversight and Reform Committee hearing on Wednesday, the postmaster general, Louis DeJoy, said the agency's plan called for 10 percent of its new trucks to be electric.

Asked by Representative Jackie Speier, a California Democrat, why that figure was not 90 percent, Mr. DeJoy pointed to cost.

**"We don't have the three or four extra billion dollars in our plan right now that it would take to do it," said Mr. DeJoy[.]**

(Emphasis added.)

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased publicly traded Workhorse securities on the NASDAQ during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of Workhorse and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Workhorse securities were actively traded

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)    whether the Exchange Act was violated by Defendants' acts as alleged herein;

b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of the Company;

c)    whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

d)     whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

e)     whether Defendants acted knowingly or recklessly in issuing false filings;

f)     whether the prices of Workhorse securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a)     Workhorse shares met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

b)     As a public issuer, the Company filed periodic public reports;

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

c) Workhorse regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d) Workhorse's securities were liquid and traded with moderate to heavy volume during the Class Period; and

e) The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

43. Based on the foregoing, the market for Workhorse securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the Company's securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:

a)     employed devices, schemes and artifices to defraud;

b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

16

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

c)      engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Workhorse securities during the Class Period.

49.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.  These Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of Workhorse's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

50.     The Individual Defendants, who are or were the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Workhorse personnel to members of the investing public, including Plaintiff and the Class.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

51.     As a result of the foregoing, the market price of Workhorse securities was artificially inflated during the Class Period.  In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Workhorse securities during the Class Period in purchasing Workhorse securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

52.     Had Plaintiff and the other members of the Class been aware that the market price of Workhorse's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Workhorse's securities at the artificially inflated prices that they did, or at all.

53.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

54.     By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Workhorse's securities during the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

55.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Workhorse's business affairs.   Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

57.    As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Workhorse's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

58.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Workhorse disseminated in the marketplace during the Class Period concerning the Company's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.   The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Workhorse securities.

59.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of Plaintiff and the Class, prays for judgment and relief as follows:

A.    Declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B.    Awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

C.    Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

1   Dated:  March 11, 2021                    Respectfully submitted,

2
                                             POMERANTZ LLP
3

4                                            */s/ Jennifer Pafiti*
                                             Jennifer Pafiti (SBN 282790)
5                                            1100 Glendon Avenue, 15th Floor
6                                            Los Angeles, California 90024
                                             Telephone: (310) 405-7190
7                                            Facsimile: (917) 463-1044
8                                            jpafiti@pomlaw.com

9                                            BRONSTEIN, GEWIRTZ &
10                                           GROSSMAN, LLC
                                             Peretz Bronstein
11                                           (*pro hac vice* application forthcoming)
12                                           60 East 42nd Street, Suite 4600
                                             New York, New York 10165
13                                           Telephone: (212) 697-6484
14                                           Facsimile: (212) 697-7296
                                             peretz@bgandg.com
15

16                                           *Attorney for Plaintiff*
17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS